**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **PURSHE KAPLAN STERLING INVESTMENTS, INC., INDIVIDUALLY AND AS ASSIGNEE OF THE CLAIMS OF THE SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN AGINST GOPI K. VUNGARALA,** | § § § § § § § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-00889-O** |
| | § | |
| **GOPI K. VUNGARALA,** | § | |
| | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Petitioner's Motion for Entry of Default Judgment ("Motion"), filed October 25, 2021. ECF No. 14. The Motion requests a default judgment against Respondent Vungarala for failure to answer or otherwise respond to Petitioner's Petition to Confirm and Correct Arbitration Award ("Petition"). *See* ECF No. 1. On October 26, 2021, United States District Judge Reed O'Connor referred the Motion to the undersigned for resolution. ECF No. 15. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion and **CONFIRM** the arbitration award in Petitioner's favor, with statutory interest, in the sum of **$21,804,092.20** plus accruing interest as outlined in Michigan Compiled Laws § 600.6013(8) and explained below. The undersigned further **RECOMMENDS** that Judge O'Connor enter an Order modifying the arbitration award to explain how the compensatory damages awarded correspond to Petitioner's claims.

I.    **BACKGROUND**

A.    **Factual Background.**

This Motion arises from a proceeding in which Petitioner Purshe Kaplan Sterling Investments, Inc. ("PKS") seeks confirmation of an award rendered in its favor in a Financial Industry Regulatory Authority ("FINRA") arbitration entitled *Purshe Kaplan Sterling Investments, Inc., Individually and as Assignee of the Claims of the Saginaw Chippewa Indian Tribe of Michigan Against Gopi K. Vungarala v. Gopi K. Vungarala and Trevor S. Sutterfield*, FINRA Case No. 19-03153 (June 7, 2021) (Bauer, Arb.). PKS is a registered broker-dealer and has been a FINRA member since 1994. ECF No. 1 at 2, 10. PKS brings this action individually and as Assignee of the claims of the Saginaw Chippewa Indian Tribe of Michigan ("Tribe") against Gopi Vungarala ("Vungarala"), of Wise County, Texas. ECF No. 1.

Vungarala worked for PKS until 2017, when FINRA barred him from acting as a broker or associating with a broker-dealer firm. *Id.* FINRA's decision arose from the same events as the arbitration at issue here. *Id.* As reflected in the FINRA Arbitration record, Vungarala was a PKS representative when he defrauded his customer and employer, the Tribe, by intentionally or recklessly misrepresenting information regarding the Tribe's accounts and his broker-dealer services between June 2011 and December 2014. *Id.* at 1-13, 29-33. Specifically, Vungarala told the Tribe he was not receiving commissions for his services while pocketing commissions based on their transactions for certain financial products he encouraged. *Id.* at 12-15. In the relevant time frame, Vungarala fraudulently induced the Tribe to invest hundreds of millions of dollars in non-traded real estate investment trusts ("REITs") and business development companies ("BDCs"), while not disclosing that he and PKS were earning, on average, seven percent commissions on

2

each transaction. ECF No. 1-1 at 10-11. As a result, Vungarala earned over $ 9 million in improper commissions. *Id.*

Unsurprisingly, Vungarala did not tell PKS he was concealing this information from the Tribe. *Id.* It appears Vungarala was weaving a web of deceit between the Tribe and PKS, including his nondisclosure of the Tribe's eligibility for roughly $3.3 million in volume discounts on REIT and BDC purchases if the Tribe bundled its separate accounts. ECF No. 1-1 at 13. Those unrealized savings passed through to Vungarala and PKS in the form of commissions on each separate account. *Id.* When that fraudulent web unwound, the Tribe initiated arbitration proceedings against PKS for damages resulting from Vungarala's misrepresentations, in a claim that settled for $9.5 million. ECF Nos. 1-1 at 15-17; 14-1 at 32-33. As part of that settlement, the Tribe assigned its separate claims against Vungarala to PKS. *Id.*

In 2019, PKS brought a claim against Vungarala through FINRA's dispute resolution services pursuant to an arbitration clause in his contract with PKS. ECF Nos. 1-1 at 36; 14-1 at 11. On June 7, 2021, the Arbitrator rendered an award in PKS's favor (the "Award") for $14,029,656.0 in compensatory damages, an award to PKS as assignee of the Tribe for $6,838,217.00 in compensatory damages plus interest, interest on the compensatory damages awarded, and $2,500.00 to reimburse PKS for the non-refundable portion of the filing fee previously paid to FINRA Dispute Resolution Services. ECF No. 1-1 at 6. On June 8, 2021, FINRA served Vungarala with the Award. ECF No. 14-1 at 15. Under FINRA Rule 12904(j), Vungarala then had thirty days to pay the Award. ECF Nos. 1 at 6; 1-4 at 5. When he failed to do so, PKS properly petitioned this Court to confirm the Award under 9 U.S.C. § 9. ECF No. 1.

**B. Procedural Background.**

PKS asks the Court to confirm the Award and "clarify the grounds upon which it was granted." *Id.* at 1. To this end, the Petition seeks (1) an Order, issued under 9 U.S.C. § 9, confirming FINRA's arbitration award to PKS; and (2) an Order and Entry of Judgment, issued under 9 U.S.C. § 11(a), (c), correcting the Award to explain which compensatory damages correspond to PKS's specific grounds for relief. *Id.* As the Petition notes, "the specific Award mistakenly fails to indicate on which of PKS Investments' or Assignee PKS's claims the arbitrator awarded compensatory damages." *Id.*

PKS filed a Motion for Service of Process by U.S. Marshal on August 6, 2021, which the Court granted the same day. *See* ECF Nos. 8-9. The U.S. Marshal served Vungarala at his Wise County residence on August 10. ECF No. 11. When Vungarala failed to respond within twenty-one days as required by Federal Rule of Civil Procedure 12(a)(1)(A)(i), PKS moved for an entry of default, which the Clerk of Court entered on September 3. *See* ECF Nos. 12-13. On October 25, PKS filed the instant Motion with an accompanying declaration in support. ECF Nos. 14 and 14-1, respectively.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment against defendants who have "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). If it is established by affidavit or otherwise that a party has failed to plead or defend his case within the time required by Fed. R. Civ. P. 12, the Clerk of Court must enter the party's default upon motion from the non-defaulting party. *See id.* A plaintiff must then apply for default judgment. *Id.* After the Clerk of Court enters default, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011,

1014 (5th Cir. 1987). To obtain a default judgment, the seeking party must establish that (1) default was entered against the defendants; (2) the defendants are neither minors nor incompetent persons; (3) the defendants are not in military service; and (4) the defendants were provided with notice of the motion for default judgment. Fed. R. Civ. P. 55; 50 U.S.C. § 3931.

A default judgment is a "drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The remedy is "available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). In considering a motion for default judgment, the Court analyzes the six *Lindsey* factors, including whether: (1) a good-faith mistake or excusable neglect caused the default; (2) a default judgment would be harsh; (3) the defendant's failure to plead has substantially prejudiced the plaintiff; (4) there are material issues of fact; (5) the grounds are clearly established for a default judgment; and (6) the Court would feel obligated, upon the defendant's motion, to set aside the default judgment. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Russell v. Hall*, No. 3:19-cv-874-S, 2020 WL 9848765, at *3-4 (N.D. Tex. Dec. 4, 2020), *rec. adopted*, 2021 WL 2226490 (N.D. Tex. June 2, 2021) (applying the *Lindsey* factors). If the circumstances warrant default judgment, then the court considers the merits of the claims and whether there is a sufficient basis in the pleadings for a judgment by default. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") governs confirmation, modification, and enforcement of arbitration awards. Section 9 provides that at any time within one year of the date an arbitration award is rendered, the party to whom it is rendered may seek an order confirming the award in federal court, and the court "must grant such an order unless the

award is vacated, modified, or corrected." Petitions to vacate, modify, or correct an award must be commenced by service upon the adverse party or their counsel "within three months after the award is filed or delivered." *Id.* § 12. If the adverse party does not live in the state where the award was rendered, "notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." *Id.*

While the FAA states "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made," the Supreme Court has held that the Act's venue provisions are permissive, not mandatory. *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 195 (2000). Thus, in the absence of a controlling venue alternative, 28 U.S.C. § 1391 provides that civil actions may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

If venue is properly laid, the Court may confirm an arbitration award under 9 U.S.C. § 9. If a party alleges the award's form is defective and provides sufficient facts to demonstrate the defect, 9 U.S.C. § 11 authorizes the Court to modify or correct the award in three instances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; and]
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11(a)-(c).

The scope of the Court's review to confirm or modify an award is exceedingly narrow, and "federal courts defer to the arbitrator's resolution of the dispute 'whenever possible.'" *Gulf Coast Indus. Worker's Union v. Exxon Co., USA*, 991 F.2d 244, 248 (5th Cir. 1993) (citing

*Anderman/Smith Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990)). Courts may

not decline to confirm an award if "the award, however arrived at, is rationally inferable" from the

facts before the arbitrator. *Anderman/Smith*, 918 F.2d at 1219 n.3. While the Court may ask

whether the arbitrator exceeded the scope of his or her duty, it may not review the arbitrator's fact-

finding. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-10 (2001).

> Relevant to the damages at issue, Michigan Compiled Laws ("MCL") § 600.6013(8) states:

> (8) Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs. In an action for medical malpractice, interest under this subsection on costs or attorney fees awarded under a statute or court rule is not calculated for any period before the entry of the judgment. The amount of interest attributable to that part of the money judgment from which attorney fees are paid is retained by the plaintiff, and not paid to the plaintiff's attorney.

Mich. Comp. Laws Ann. § 600.6013(8) (West, Westlaw through 2021 Pub. L. No. 113).

## III.    ANALYSIS

### A.    The Court should modify the Award under 9 U.S.C. § 11(a), (c) because it contains a material mistake evident on its face that renders it imperfect in form not affecting its merits.

Before considering the request for a default judgment, the undersigned addresses defects

in the Award's form, whether those defects impact the Award's merits, and whether sufficient

grounds exist by which the Court can ascertain the correct form and modify the Award accordingly.

PKS's Petition seeks modification of the Award under 9 U.S.C. § 11(a), (c), which authorizes the

Court to modify awards (1) with evident material mistakes on their face; or (2) imperfect in matters

of form not affecting their merits. In this regard, the Petition seeks a straightforward modification

to identify the claims to which the Award's compensatory damages correspond. *See* ECF No. 1 at 2. As the Petition explains, "[i]ndicating which claim(s) relate(s) to a particular compensatory damage award is material and critical, because claims for common law fraud and breach of fiduciary duty are not dischargeable in bankruptcy per Section 523 of the Bankruptcy Code." *Id.* at 7.

As explained in PKS's Corrected Second Amended Statement of Claim, pp. 39-44 ("Relief Requested"), it is evident the sum of $14,029,656.00 awarded in ⁋ 1 of the Award, plus interest pursuant to MCL § 600.6013(8) awarded in ⁋ 2, corresponds to PKS's third direct claim against Vungarala, common law fraud. *See* ECF No. 1-1 at 49. Similarly, the sum of $6,838,217.00 awarded to PKS in ⁋ 3 of the Award, plus the interest pursuant to MCL § 600.6013(8) awarded in ⁋ 4, corresponds to the Tribe's claims against Vungarala, which the Tribe assigned to PKS as part of its 2019 arbitration settlement. *Id.* The Tribe's claims consist of claims for breach of fiduciary duty (PKS's third claim as Assignee), common law fraud (PKS's eighth claim as Assignee), and breach of contract (PKS's ninth claim as Assignee). The Tribe's damages equal the difference between $13,338,217.00 (Vungarala's total commissions received from the Tribe for non-traded REITs and BDCs on its accounts) less $6.5 million (the settlement amount PKS paid the Tribe). *Id.*; *see also id.* at 15-18, 35-37, 45-47.

Accordingly, Judge O'Connor should enter an Order under 9 U.S.C. § 11(a), (c) modifying the Award, which in current form possesses an evident material mistake in its "description of any person, thing, or property referred to in the award." *See* 9 U.S.C. § 11(a). Consequently, the current Award is "imperfect in matter of form not affecting the merits of the controversy." *See id.* § 11(c). In relevant part, the modified Award should read as follows:

¶ 1: "Vungarala is liable for and shall pay to PKS Investments the sum of $14,029,656.00 in compensatory damages on PKS's claim for common law fraud, claim three of the Corrected Second Amended Statement of Claim; and

¶ 3: "Vungarala is liable for and shall pay to Assignee PKS the sum of $6,838,217.00 in compensatory damages on Assignee PKS's claims for common law fraud, breach of fiduciary duty, and breach of contract, claims three, eight, and nine of the Tribe's claims assigned to PKS.

This modification does not alter the Award's substance, but amends the Award to explain how the damages awarded correspond to the claims for relief made, as clearly evidenced in PKS's Second Amended Statement of Claim.

> ### B. The Court should confirm the Award in favor of PKS by entering default judgment against Vungarala for the full amount of the award plus interest.
>
> #### 1. An entry of default judgment is procedurally proper.

Rule 55's procedural requirements for default judgment are satisfied because PKS served Vungarala according to law, but he failed to answer or otherwise respond within the time required. *See* ECF Nos. 11-13. This failure prompted the Clerk of Court to enter default as required by Rule 55(a). *Id.* PKS has shown Vungarala is not a minor or incompetent person, thus satisfying Rule 55(b)(2), and is not currently engaged in military service, thus satisfying 50 U.S.C. § 3931. *See* ECF No. 14-1 at 4-5. Accordingly, default judgment is proper under Rule 55.

Nevertheless, PKS must make additional showings to convince the Court default judgment is appropriate considering the case's specific circumstances. *Nishimatsu*, 515 F.2d at 1206. To this end, the Court reviews the six factors outlined in *Lindsey* noted above and concludes that entry of default judgment is warranted here. *See Lindsey*, 161 F.3d at 893. Under the first factor, it is unlikely Vungarala's delay is due to a "good faith mistake or excusable neglect." *Id.* The record

reflects he has not filed any pleadings or otherwise contacted the Court in this matter. Additionally, despite numerous attempts by PKS to contact him, he has made no contact whatsoever with PKS or its counsel. *See* ECF No. 14-1 at 4-5. The third factor supports default judgment, as Vungarala's unresponsiveness risks substantial prejudice to PKS because it must seek confirmation and modification of FINRA's award within the FAA's specified time limits. Prejudice results if a defendant's failure to respond "threatens to halt the adversary process." *Russell*, 2020 WL 9848765, at *4. Because Vungarala's unresponsiveness brings the process to a standstill, the third factor favors default judgment in this case.

The fourth factor favors default judgment because there are no disputed issues of material fact in this case. The Petition does not bring a new cause of action or allege any new facts, but seeks judicial confirmation of a duly rendered arbitration award. Thus, the case does not present any facts which Vungarala could dispute. In this respect, the fifth factor also supports default judgment. Because "federal courts defer to the arbitrator's resolution of the dispute 'whenever possible,'" and nothing in the record calls the Award into question, the grounds for a default judgment considering Vungarala's unresponsiveness are clear. *Gulf Coast*, 991 F.2d at 248 (citing *Anderman/Smith Co.*, 918 F.2d at 1218). Consequently, the Court would not be obligated to reconsider a judgment should Vungarala break his silence now. Accordingly, the sixth factor also favors default judgment.

The only factor that arguably could weigh against entry of default judgment is the third, the harshness of an entry of default judgment. *See Lindsey*, 161 F.3d at 893. But entries of default judgment are necessarily harsh because they grant an outcome unfavorable to the nonresponding party. That inherent harshness is not what the third *Lindsey* factor contemplates. Vungarala has been given every opportunity—in both the FINRA arbitration and the instant proceeding—to plead

his cause or call the Award's validity into question. Because he failed to do so and has presented no excuse for that failure, an entry of default judgment is not overly harsh. This is true even given the fact that default judgment is a "drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala*, 874 F.2d at 276. With the clarity of PKS's entitlement to default judgment, a general hesitancy to grant default judgments and a single *Lindsey* factor do not outweigh the rest of factors and the specific facts of this case. A grant of default judgment does not necessitate analysis of the merits of an unresolved dispute, but rather, confirmation of an Award duly rendered by the FINRA arbitrator. Accordingly, an entry of default judgment is procedurally appropriate.

## 2. The pleadings establish PKS's entitlement to a default judgment.

Having established the procedural propriety of default judgment, the Court must next determine whether PKS's pleadings provide a sufficient basis for judgment by default. *Nishimatsu*, 515 F.2d at 1206. In doing so, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *Shipco Gen., Inc.*, 814 F.2d at 1014. PKS does not plead new damages in this case, but seeks confirmation of a prior arbitrator's award. And the Court generally defers to the arbitrator's award and narrowly reviews the award. *Gulf Coast*, 991 F.2d at 248 (citing *Anderman/Smith Co.*, 918 F.2d at 1218); *Major League Baseball Players Ass'n*, 532 U.S. at 509-510. The Court must generally ensure the arbitrator did not exceed the proper scope of his role in the proceeding and must ask if the Award is "rationally inferable" from the underlying facts presented in the arbitration. *Anderman/Smith*, 918 F.2d at 1219 n.3.

After reviewing the Award, the file, and the relevant facts, the undersigned concludes that the arbitrator clearly articulated the damages arising from Vungarala's fraudulent dealings with the Tribe while serving as a PKS representative. ECF No. 1 at 1-13, 29-33. The FINRA investigation and a resulting SEC disciplinary action, the Tribe's arbitration against PKS, and

11

PKS's arbitration against Vungarala all solidified Vungarala's culpability, his liability to PKS, and PKS's entitlement to payments from him both individually and as Assignee of the Tribe's claims. The undersigned sees no genuine dispute of material fact that would undermine PKS's entitlement as outlined in their pleadings.

Because the pleadings establish PKS's entitlement to default judgment, Judge O'Connor should confirm the Award rendered in *Purshe Kaplan Sterling Investments, Inc., Individually and as Assignee of the Claims of the Saginaw Chippewa Indian Tribe of Michigan Against Gopi K. Vungarala v. Gopi K. Vungarala and Trevor S. Sutterfield*, FINRA Case No. 19-03153 (June 7, 2021) (Bauer, Arb). To do so in the absence of a response from Vungarala, Judge O'Connor should enter a judgment by default against Vungarala for the full amount of the arbitral award. Specifically, Judge O'Connor should confirm PKS's direct claim against Vungarala (referred to in the pleadings as "PKS Investments' claim") for $14,029,656.00 plus $629,427.93 in Michigan statutory interest through October 21, 2021, for a subtotal of $14,659,083.93, plus additional statutory interest of $698.42 per diem, from October 22, 2021 through the date of his final judgment. Additionally, Judge O'Connor should confirm PKS's assigned claim against Vungarala (referred to in the pleadings as "Assignee PKS's claim") for $6,838,217.00 plus $306,791.18 in Michigan statutory interest through October 21, 2021, for a subtotal of $7,145,008.18, plus additional statutory interest of $340.42 per diem, from October 22, 2021 through the date of his final judgment. *See* MCL § 600.6013(8).

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** PKS's Motion for Default Judgement (ECF No. 14) and **ENTER** a **DEFAULT JUDGMENT confirming the FINRA Award** to PKS pursuant to 9 U.S.C. § 9 **and modifying the Award** pursuant to 9 U.S.C. § 11(a), (c) as follows:

1. Vungarala is liable for and shall pay to PKS Investments the sum of $14,029,656.0 in compensatory damages on PKS Investments' third claim, for common law fraud.
2. Vungarala is liable for and shall pay to PKS Investments interest on the above-stated compensatory damages sum pursuant to [Michigan Compiled Laws] § 600.6013(8).
3. Vungarala is liable for and shall pay to Assignee PKS the sum of $6,838,217.00 in compensatory damages on Assignee PKS's third claim (common law fraud), eighth claim (breach of fiduciary duty), and ninth claim (breach of contract).
4. Vungarala is liable for and shall pay to Assignee PKS interest on the above-stated compensatory damages sum pursuant to [Michigan Compiled Laws] § 600.6013(8).
5. Vungarala is liable for and shall pay to PKS the sum of $2,500.00 to reimburse PKS for the non-refundable portion of the filing fee previously paid to FINRA Dispute Resolution Services.
6. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, treble damages, and attorneys' fees, are denied.

The default judgment should confirm that **Vungarala is liable to and shall pay PKS $21,804,092.20**, which is the sum of PKS's direct claim against Vungarala ($14,029,656.10), accrued statutory interest on that amount through October 21, 2021 ($629,427.93), PKS's assigned claims against Vungarala ($6,838,217.00), and accrued statutory interest on that amount through October 21, 2021 ($306,791.18). In addition, the final judgment should award PKS per diem interest that will continue to accrue until such time as Judge O'Connor enters final judgment.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file

specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on November 19, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

14